UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/14/2011
```

------------------------------------X

ASSURED GUARANTY CORP.,

               Plaintiff,

    - against -

EMC MORTGAGE CORPORATION,

               Defendant.

------------------------------------X

No. 10 Civ. 5367 (NRB)

[~~PROPOSED~~] CASE
MANAGEMENT PLAN AND
SCHEDULING ORDER

      The following Case Management Plan is entered after consultation with counsel for Assured Guaranty Corporation ("Assured" or "Plaintiff") and EMC Mortgage Corporation ("EMC" or "Defendant") (each individually a "Party" or collectively the "Parties"). This Case Management Plan is also a Rule 16 and 26(f) scheduling order as required by the Federal Rules of Civil Procedure.

## CASE SCHEDULE

      The Parties stipulate and agree to the following schedule for pre-trial proceedings in this matter:

      **A.**    **Initial Disclosures:** Each Party shall make its initial voluntary disclosures pursuant to Rule 26(a)(1) on or before December 17, 2010.

      **B.**    **Fact Discovery:** Party fact discovery shall be completed by December 15, 2011. Borrower-related discovery from third parties may continue through 90 days before trial.

      **C.**    **Amended Pleadings:** Each Party may amend its pleadings as of right at any time before August 8, 2011. The non-amending Party reserves all rights to move to dismiss the

amended pleading and to seek discovery from the amending Party on any new claims or defenses.

**D.** **Joinder of Additional Parties:** Each Party may join additional parties as of right at any time before August 8, 2011.

**E.** **Expert Reports and Discovery:** Each Party shall have the right to serve an expert report concerning any issue as to which it bears the initial burden of proof on or before February 2, 2012. Each Party may serve rebuttal expert reports on or before March 29, 2012 and reply expert reports on or before April 26, 2012. Expert discovery shall be completed by no later than June 14, 2012.

**F.** **Summary Judgment Motions:** Each Party shall serve any motions for summary judgment on or before July 12, 2012. Oppositions shall be served by August 30, 2012, and replies shall be served by September 27, 2012.

## DISCOVERY PLAN

The Parties stipulate and agree that the following terms shall govern the discovery in this matter:

**G.** **Subjects on which Discovery May Be Needed:** Subjects on which discovery may be needed generally include but are not limited to (and without prejudice to what the Parties may request):

    1.    Negotiation of the Transaction;

    2.    Representations and warranties regarding the Transaction and the mortgage loans included therein;

    3.    Characteristics of the mortgage loans included in the Transaction;

    4.    Underwriting standards and guidelines;

    5. Policies and procedures regarding due diligence, quality control, and surveillance;

    6. Performance of the Transaction and the mortgage loans included therein;

    7. Requests for any party to put-back, repurchase, substitute, or cure any breaching loans;

    8. Communications between the parties and with third parties relating to the Transaction or the mortgage loans included therein; and

    9. Damages.

**H.** **Document Production**: If not already issued, the Parties shall issue their initial requests for documents and things by December 17, 2010.

Each Party will produce documents on a rolling basis and will substantially complete document production by July 1, 2011.

Notwithstanding those deadlines, the Parties will produce the following documents (not including e-mails or databases (which are addressed in section N.2 below)) no later than January 28, 2011:

    1. Contracts and other deal documents pertaining to the mortgage-backed securities transaction at issue in this proceeding, *i.e.*, SACO I Trust Series 2005-GP1 (the "Transaction"), including, but not limited to, the final mortgage loan tape and mortgage loan schedule;

    2. Documents sufficient to show the performance of the Transaction;

    3. Documents related to any determination by any Party that the mortgage loans included in the Transaction complied or failed to comply with any representations or warranties provided by a Party;

  4. Documents reflecting the determination whether to repurchase or substitute any mortgage loans included in the Transaction;

  5. Documents related to any due diligence or quality control conducted by either Party of the mortgage loans included in the Transaction;

  6. Documents reflecting the underwriting guidelines, standards, or protocols applicable to the origination of such mortgage loans in the Transaction;

  7. The credit memorandum created by Assured in connection with its decision to issue the insurance policy for the Transaction and any related, responsive documents located in the same file;

  8. The loan files in each Party's possession, custody or control for the mortgage loans included in the Transaction; and

  9. Organizational charts.

The above list of documents to be produced by January 28, 2011 encompasses those documents that are readily identifiable and obtainable.

In addition to the documents listed above, each Party may identify periodically for the other Party particular categories of documents or documents from particular custodians that the requesting Party wishes to have produced on a priority basis, meaning that such documents will be produced before other, non-priority documents. Each Party shall comply expeditiously with such prioritization requests unless doing so would cause undue disruption, burden, or expense. With each production of documents, the producing Party will identify the custodians of the documents being produced and whether production for any of those custodians is believed to be substantially complete.

To facilitate this process, the Parties will exchange lists of document custodians by January 25, 2011, confer in good faith to agree upon final versions of those lists by February 14, 2011 and to identify to each other within that time frame the most relevant custodians. The Parties may further supplement and revise their custodian lists as additional information is provided during discovery. By February 10, 2011, the Parties may then segment the other Party's custodian list into priority tiers, each tier consisting of not more than one-fourth of the other Party's custodians. The Parties shall use their best efforts to produce documents in accordance with the following dates and shall work in good faith to resolve any issues that arise: Production of the first tier will by March 31, 2011; second tier by April 28, 2011, third tier by May 31, 2011, fourth tier by June 30, 2011, and any additional tiers by July 1, 2011. To the extent a Party in good faith determines that a particular custodian's documents cannot be produced as scheduled, the Party may switch that custodian with one in the next tier. If switching the custodian with one in the next tier is insufficient to resolve the Party's difficulties in meeting these deadlines, the Parties shall work in good faith to resolve those issues. Nothing precludes either Party from producing on a schedule sooner than the foregoing.

In addition, Defendant agrees that Plaintiff may immediately access the discovery and confidential information, and the pleadings, submissions, court filings, and transcripts containing any such discovery and confidential information that Defendant has disclosed in the cases of *Ambac Assurance Corp. v. EMC Mortgage Corp.*, No. 08 CV 9464 (RMB) ("*Ambac*") and *Syncora Guarantee, Inc. v. EMC Mortgage Corp.*, No. 09 CV 3106 (PAC) ("*Syncora*"), pending in this district. Defendant will provide Plaintiff with a list of Bates numbers of documents produced by Defendant in *Ambac* and *Syncora* that contain a search term from EMC's list of agreed-upon search terms to be used in the present action. Further, Defendant will

not object if Plaintiff seeks to access the discovery and confidential information, pleadings, submissions, court filings, and transcripts containing any such discovery and confidential information that non-parties have disclosed in the *Ambac* and *Syncora* actions.

I. **Fact Depositions**: The Parties agree that each may take up to twenty-five fact depositions of the other Party, with the right to take up to five additional fact depositions of the other Party for good cause. The Parties shall negotiate in good faith, and use their best efforts to provide at least two weeks advance written notice for, the scheduling of depositions.

For purposes of this provision, each deposition shall be governed by the time limitations in Rule 30(d) with two exceptions:

First, each Party is permitted to take the depositions of up to five Party witnesses for a duration greater than one day of seven hours, but which shall not exceed three days totalling twenty-one hours. Each seven hour period or portion thereof shall constitute one deposition for purposes of the twenty-five fact deposition limit.

Second, for Party depositions noticed under Rule 30(b)(6), every seven hours of testimony completed (regardless whether of one or multiple witnesses) shall constitute a separate deposition for the purposes of assessing the twenty-five fact deposition limit. Any portion of seven hours used for the final Party 30(b)(6) deposition witness of either party shall constitute a full seven hours toward the twenty-five deposition limit.

There shall be no limit on the number of depositions of third parties.

J. **Interrogatories:** Each Party may serve no more than twenty-five (25) written interrogatories on the other Party and must comply with Southern District Local Rule 33.3 regarding the scope of interrogatories.

K.  **Expert Depositions:** Testifying experts may be deposed for up to fourteen (14) hours.

L.  **Expert Discovery:** The Parties shall comply with the Federal Rules of Civil Procedure, including Rule 26(b)(4) effective as of December 1, 2010, that precludes discovery of certain expert material. In addition, the Parties shall not be required to produce any documents disclosed to, reviewed or prepared by an expert, but not included in, relied upon, or cited by the expert in his or her report.

M.  **Privilege Logs:** The Parties agree that they need not list on privilege logs to be exchanged in this matter any communications with or documents created by outside legal counsel on or after July 1, 2008 that are entitled to attorney-client privilege or work-product protection, subject to providing (a) an identification of the time period encompassed by the withheld documents; (b) a listing of the individuals who were authors or addressees or were copied on the documents; and (c) a representation by counsel as to whether the documents either (i) were prepared to assist in anticipated or pending litigation or (ii) contain information reflecting communications between counsel or counsel's representatives and the client or the client's representatives for the purposes of facilitating the rendition of legal services to the client.

N.  **Electronically Stored Information:** The Parties have begun to discuss issues regarding electronic discovery, including search term protocols, and will continue to discuss the issues set forth in Rule 26(f), and related issues, as discovery proceeds, and will work together in good faith to resolve any such issues that may arise. To date, the Parties have agreed that:

1.  Format: The Parties will agree upon a list of specifications for the format for the discovery and disclosure of documents and electronically stored information by February 10, 2011.

2. <u>Databases:</u> The Parties will produce responsive data from all databases, or all portions of all databases, responsive to the other's requests for production, unless otherwise agreed by the parties or ordered by the Court. Extracts of responsive information from databases will be produced in electronic form (e.g., Excel, Access).

3. Defendant will produce all responsive information from the following databases on a priority basis:

- By February 28, 2011: The Whole Loan Inventory Tracking System and the LMS database.

- By March 14, 2011: The Fastrieve Imaging System, the ACT database, and the FiServe/Unifi database.

- By March 28, 2011: The HALO database, the Cogent database, the Fraud Prevention database, and the Fidelity/LPS MSP database.

If, despite its best efforts, Defendant is unable to meet these deadlines, the Parties shall work in good faith to resolve any issues that arise.

4. Plaintiff will produce all responsive information from the following databases on a priority basis:

- By February 28, 2011: The Corp. Track database.

- By March 14, 2011: The FG and GSS databases.

If, despite its best efforts, Plaintiff is unable to meet these deadlines, the Parties shall work in good faith to resolve any issues that arise.

5. To the extent additional databases containing responsive information exist, responsive data from all such other databases will be produced during the course of document discovery, unless otherwise agreed by the Parties or ordered by the Court. The Parties will

produce at or before the same time they produce any database materials all information that will enable the other Party to decode, access, and manipulate all data produced from those databases, including, but not limited to database instructions, keys, and dictionaries, if any such documents or information exist.

    6. <u>Search Terms</u>: The Parties will exchange lists of search terms to be used to search their own electronic records by January 5, 2011. Each Party may also provide a list of suggested search terms for the other Party to use. The Parties shall thereafter negotiate in good faith to agree on final search terms.

**O.** <u>**Protective Order**</u>: The parties have agreed to the terms of a proposed Confidentiality Stipulation and Protective Order governing the disclosure of confidential, privileged and work-product protected information in this matter, which the Court has approved and entered.

## OTHER PROVISIONS

**P.** <u>**Status of Settlement Discussions:**</u> The Parties have explored settlement prior to the commencement of this action, but have fundamentally different views as to the factual, legal, and equitable issues in dispute between the Parties in this action.

**Q.** <u>**Jury Trial:**</u> The Parties agree that they have each waived, to the fullest extent permitted by law, any right to a trial by jury with respect to the breach of contract claims as currently pleaded.

Dated:        New York, New York
              March  //  , 2011

So Ordered:

_____
Honorable Naomi R. Buchwald, U.S.D.J